IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**RICHARD CHAVEZ,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　　　　　**CIV No. 10-1057 LH/RHS**

**CITY OF ALBUQUERQUE,**

    **Defendant.**


### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the City of Albuquerque's Motion for Summary Judgment (Docket No. 34). In this case, Plaintiff Richard Chavez ("Chavez") alleges that he was an employee of the City of Albuquerque, and that he was wrongfully terminated under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et. seq.* (the "FMLA"). Chavez has been a laborer at the Open Space Division of the City's Parks and Recreation Department ("the City") since April of 2006. He alleges that although he did not apply for family and medical leave to care for his girlfriend, who was experiencing pregnancy complications, until October 10, 2008, that his supervisors were aware of these pregnancy related health problems as early as July 2008. He further alleges that the City did not explain his responsibilities to him under the FMLA until October 27, 2008. He acknowledges being subjected to disciplinary actions from July 2008 to November 3, 2008, but contends that he was wrongfully terminated in early November 2008, alleging that the City's action was retaliatory in nature and in violation of the FMLA.

The Court, having considered the motion, briefs, evidence, arguments, relevant law, and otherwise being fully advised, concludes that the motion should be **granted** and that Plaintiff's claims should be **dismissed.**

**I. Factual Background**

  **A.  Undisputed Facts**

Many facts advanced by the City, particularly about events that occurred before September 29, 2008, are undisputed by Plaintiff, and are therefore deemed admitted for purposes of this motion.[1]

Chavez's work responsibilities included customer service as well as opening, closing and maintaining City parks and picnic areas.  His coming to work promptly and staying until closing time was an important aspect of his employment.  Chavez understood the importance of keeping these regular hours and that if he were late or sick or going on vacation, that he needed to communicate appropriate information about his absence from the workplace to his supervisors (Chavez Depo. at 69-70).

Chavez first applied for leave under the FMLA on October 10, 2008.  The City approved his request for intermittent FMLA leave, to attend to the medical needs of his pregnant girlfriend, retroactive to September 30, 2008.  (*See* Ex. A to Compl.).  Specifically, Chavez was approved for intermittent FMLA leave for his girlfriend's high risk pregnancy for 2-4 doctor visits per week.[2]

---

[1]  *See* Def.'s Mem. in Supp. of Mot. For Summ. J. (Doc. 35)("Def.'s MSJ"), Undisputed Facts ("UFs") 1-23, 29, 30, 34, 36-45.

[2]  Under the FMLA, eligible employees are "entitled to a total of 12 workweeks of leave during any 12-month period" for "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  Once the employee returns from leave, he must be reinstated to his previous position or an equivalent one.  *See id.* § 2614(a)(1).  In this case, on October 10, 2008,

On October 27, 2008, Chavez signed his copy of the Employee and Department Rights and Responsibilities form for using FMLA leave, in person. This form had been mailed to Chavez on October 10, 2008.

According to Chavez, he was fired for missing work, for not calling in when he was not coming to work, for not opening the parks on time and for closing the parks early. (Chavez Depo. at 83). The reason Chavez gives for not calling his supervisor to notify him that he would be missing work was because "[he] figured that if [he] had to miss, . . . they knew it[,]" once he had applied for FMLA. (Chavez Depo. at 83-84). Exhibit 7 to Chavez's deposition, a City document entitled "Family and Medical Leave Certification," provided his complete understanding of the FMLA. Chavez testified at his deposition that it was his understanding that he could take off of work whenever he needed to do so if it was to assist his girlfriend; that Exhibit 7 did not say that he did not need to call in if he was not going to be attending work; and that he assumed there was an understanding with his supervisor that on the days he had to miss work for medical reasons, that Jim Sattler (one of his supervisors) would be there to open parks, until his girlfriend's pregnancy was over – i.e., that he need not call in. (Chavez Depo. at 83-85).

Chavez received various reprimands from the City, both before and after his application for leave under the FMLA, as shown by the following events.

On October 17, 2007, Chavez locked the park early with people inside the gate. He was given his first verbal advisement from the City.

Chavez received an employee award in December of 2007 (Schmader Depo. at 24). He was

---

Chavez was granted "Intermittent Leave" which was defined as "leave taken in separate periods of time due to a single illness or injury, rather than for one continuous period of time, and may include leave of periods from an hour or more to several weeks." (*See* Ex. A to Compl.).

nominated by several co-employees for doing a good job, and the Open Parks Department recognized him accordingly.

A second verbal advisement was issued to Chavez on December 27, 2007, after he was late for his scheduled shifts on December 26 and 27, 2007. (Ex. 1, Schmader Aff.). Chavez appeared late again for his scheduled shift on December 28, 2007, but provided a medical excuse. His time sheet did not reflect his appearing late, but he claimed unauthorized overtime. On January 15, 2008, Chavez received the first written letter of advisement, which related to unauthorized overtime. On July 18, 2008, without calling in to report that he would be late, Chavez was four hours late for his scheduled shift of work, which lead to his receipt of a second written letter of advisement on July 21, 2008. A third verbal advisement was issued to Chavez on an undisclosed date after the City received a complaint on August 6, 2008, about the late opening of a City open space and for poor customer service. On August 10 and 11, 2008, Chavez failed to appear for his scheduled shift and he failed to call in to report his absence from work. On August 13, 2008, notice of a pre-determination hearing was issued to Chavez. On August 14, 2008, a third written letter of advisement was issued to Chavez for failing to appear for a scheduled work shift.

Chavez testified at his deposition that he knew that the City was advising him that he could be disciplined, up to and including termination, by the written letters given to him in July and August 2008 (Chavez Depo. at 93 and 95).

On August 20, 2008, Chavez attended a pre-determination hearing without counsel. (Deft's Ex. E). At that time, the City suspended Chavez for five days without pay and imposed a mandatory referral to the Employee Assistance Program to Chavez. Chavez failed to comply with the referral. He did not appeal the five day suspension.

On September 10, 2008, Chavez received notice that a pre-determination hearing was

4

scheduled for September 17, 2008.[3] The notice listed charges that included Chavez sleeping in a City vehicle while on duty, his being rude and uncooperative to administrative staff, and his failure to attend mandatory counseling. The City suspended Chavez for ten days without pay, to be served from September 15-September 28, 2008. He did not file a grievance to contest this suspension.

In sum, although he received an employee award in December of 2007, Chavez began to have disciplinary problems with the City in mid-October, 2007. From that time until the end of September 2008, he received three verbal advisements, three written letters of advisement, one five day suspension, one mandatory referral to the Employee Assistance Program, and one ten day suspension.

Schmader, one of Chavez's supervisors, was notified of Chavez's FMLA leave in the early part of October 2008. (Schmader Depo. at 16). Marmon, Chavez's immediate supervisor, learned of these medical problems in the beginning of October 2008, and recommended to Chavez that he apply for FMLA leave (Marmon Depo. at 9,10). Sattler, Marmon's direct supervisor and Chavez's indirect supervisor, became aware of Chavez's girlfriend's medical problems in the beginning of October 2008. He knew that Chavez was approved for FMLA leave and that the department had previously had problems with Chavez, so that in his opinion, approval for FMLA did not change past events. (Sattler Depo. at 15-16).

### B. Disputed Facts

Although the parties agree that Chavez applied for FMLA leave on October 10, 2008, and that this request for intermittent FMLA leave was approved - retroactive to September 30, 2008-

---

[3] This notice was subsequently amended, changing the hearing date and making additional allegations of misconduct by Chavez (Def.'s Exs. G-I). The record is unclear as to whether or not a pre-determination hearing was held, and if so, on what date, following the first pre-determination hearing which occurred on August 20, 2008, and before the final pre-determination hearing, which occurred on November 3, 2008, which resulted in Chavez's termination.

other events that occurred subsequent to October 1, 2008 are largely in dispute, as indicated below.

The City alleges that Chavez failed to appear for work and failed to properly call in to his supervisor to report his absence on these dates: October 4-7, 16-20 and 23-24, 2008. (UMF 24-28). Chavez responds to these allegations by contending that because he was on FMLA leave, "he was not notified to call in daily until October 27, 2008."[4] (Pl.'s Resp. at 2). It appears to be Chavez's position that he was unaware of the necessity to call in, once he was on FMLA leave, and that therefore, prior to October 27, 2008, non-compliance with this requirement should not be considered to be misconduct on his part.

Chavez does not deny that he was given a revised notice of pre-determination hearing letter which related to his alleged failures to appear for work or to call in to his supervisor on these eleven dates in October 2008. (Def.'s MSJ, UF ¶ 29). Chavez also does not dispute that, on November 3, 2008, he and his attorney attended a pre-determination hearing; that the result of this hearing was a recommendation that his employment be terminated (*Id.* ¶ 30); and that he did not file a grievance to contest his termination. (*Id.* ¶ 34).

The City sets forth its underlying reasons for the recommendation by Matt Schmader, Chavez's supervisor, that Chavez be terminated from his employment.[5] (*Id.* ¶¶ 31-33). Specifically, the City summarizes the reasons given by Matt Schmader, Chavez's supervisor, for recommendation of Chavez's termination. (*Id.* ¶ 31). These are that: (1) Chavez did not dispute any of the charges

---

[4] According to Chavez, October 27, 2008 is the date that he signed an acknowledgment as to the necessity that he call in to report absences, even for FMLA leave, and this is the date he became aware of his responsibilities under the FMLA.

[5] In his affidavit, Matt Schmader states: "Chavez was fired for numerous absences, failure to maintain a schedule, failure to advise supervisors of his absences in a timely manner or not all, for not opening the parks on time and for closing the parks early. He was also terminated for being insubordinate and rude to his co-workers, sleeping in a City vehicle while he was supposed to be working and failing to attend mandatory counseling with the Employee Assistance Program as ordered." (Schmader Aff. ¶ 9).

6

against him related to incompetence, inefficiency and inadequate performance; (2) Chavez was untruthful when he stated that he had not received the instructions for using FMLA leave until October 27, 2008; (3) Chavez did not comply with the instruction to attend mandatory counseling; and, (4) Chavez had received verbal counseling, three letters of advisement and five and ten day suspensions.

At his deposition, Schmader outlined specific instances of misconduct by Chavez in October of 2008:  he was written up on October 2, 2008 for insubordination for not completing an assignment; on October 3, for not providing notification to his supervisor that he was not coming in to work; on October 4, Chavez did not communicate with his supervisor until six hours after he was scheduled to come to work; on October 5, 6, 16-20, 23 and 24, 2008, he was scheduled to come to work, did not do so, and did not notify anyone that he would be absent (Schmader Depo. at 19-20).

Chavez disputes these assertions, contending that "the violations which Matt Schmader complained of fell during Richard Chavez's FMLA leave and prior to his signing the acknowledgment regarding calling in for work[,]" and that these facts give no credence to the fact that an employee award was given to Chavez in the Fall of 2007.  (Pl.'s Resp., Disputed Material Facts ("DMF") ¶¶ (b) and (d)).    In his affidavit, Chavez states that when he was approved for intermittent leave on October 10, 2008, he was not informed to call in on days when he could not be at work.  He states that he was "not really cognizant of the regular mode at work at the time, because my girlfrien[d] who I was living with was having a very difficul[t] pregnancy and we had lost a baby in December in the year previous."  (Chavez Aff. ¶ 6).  In the next paragraph, he states that he was called in and told for the first time, on October 27, 2011, that he had a responsibility under the FMLA to call in each day he would be late or absent.  In Paragraph 9, he states that he

7

does not remember receiving information about the FMLA when he was hired, and did not see that FMLA materials were part of his orientation package. Chavez basically asserts that he was unaware of the FMLA until a co-worker mentioned to him that he should apply for FMLA leave.

The City asserts that Chavez was provided with a copy of the City's personnel rules and regulations, including FMLA regulations, when he was hired on April 17, 2006. ((Def.'s MSJ, UF ¶ 35).

Chavez disputes this, stating that he "was given documents upon his hire which obviously were not gone over with him and the forms do not indicate FMLA papers were included," and that he did not realize this until a co-worker mentioned to him that he should apply for FMLA. (Pl.'s Resp., DMF ¶ (e)). Exhibit 5 to Chavez's deposition, a New Employee Orientation Acknowledgment Form, signed by Chavez, indicates that on April 17, 2006, he received training and educational materials on certain City policies and that he had been instructed to read and indicated that he would read the provisions of policies, including "Personnel Rules and Regulations on eweb.cabq.gov." There is no direct evidence that FMLA regulations were available on this website in April 2006.

Chavez disputes the City's assertion that, at all relevant times, it had posted a copy of "Employee Rights and Responsibilities" at the location where Chavez worked. Chavez disputes these facts with the assertion that he does not remember seeing any of the notices posted, and just because they were posted does not mean that he saw them. (Chavez Aff., ¶ 4).

## II.  Summary Judgment Standards

Summary judgment should be granted only if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). There is no

genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the party seeking summary judgment has the "initial burden to show that there is an absence of evidence to support the non-moving party's case. *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). Upon meeting that burden, the non-moving party must "identify specific facts that show the existence of a genuine issue of material fact." *Id.* To bring forward specific facts showing a genuine issue for trial, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

### III.  The Family Medical Leave Act

The Tenth Circuit recognizes two theories of recovery under § 2615(a) of the FMLA. One is a retaliation or discrimination theory under § 2615(a)(2), which makes it unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the FMLA. *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170-71 (10th Cir. 2006). The other is an interference theory under § 2615(a)(1), which makes it unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided by the FMLA.

The complaint in this matter is poorly drafted and does not specifically allege which FMLA theory Chavez is pursuing. The Court contemplated dismissing this matter for a failure to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Given the full briefing under summary judgment, however, the Court has decided to do a

full analysis of both possible theories of recovery, as set forth below.

## IV.  Interference of Rights under the FMLA

### A.  *Prima Facie* Case

The City argues that Chavez cannot support a *prima facie* case for interference. (Def.'s MSJ at 11).  Having reviewed the record before it, the Court concludes that Chavez has sufficient facts to support a *prima facie* case for interference.

To prevail for this type of claim, Chavez must demonstrate: "(1) that he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights." *Metzler*, 464 F.3d at 1180 (*quoting Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005).

"Under this theory, a denial, interference, or restraint of FMLA rights is a violation regardless of the employer's intent." *Metzler*, 464 F.3d at 1180.  An employer can defend the claim by showing that "the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave."  *Id*. (Internal quotation marks omitted); *see* 29 C.F.R. § 825.216(a)(1)(Department of Labor FMLA regulation stating that when an employee is laid off during FMLA leave, "[a]n employer would have the burden of proving that an employee would have been laid off during the FMLA leave period, and therefore, would not be entitled to restoration.").

#### 1.  Entitlement to FMLA Leave, Effective on September 30, 2008

It is undisputed that on October 10, 2008, Chavez applied for FMLA leave, and that the City approved his request for intermittent FMLA leave, retroactive to September 30, 2008.  It is also undisputed that, prior to that time, Chavez had not requested FMLA leave.  There is no proof that,

prior to early October 2008, when Marmon learned of Chavez's girlfriend's medical problems, any of Chavez's supervisors was aware of his need for medical leave. Consequently, there is no evidence that Chavez was entitled to FMLA leave before he applied for it on October 10, 2008.[6] The only evidence in the record is that Jim Marmon suggested that Chavez apply for FMLA leave just before he applied and was approved for it.

### 2. Adverse Action

It is also undisputed that the City terminated Chavez's employment on November 6 or 7, 2008. This constitutes an adverse action by the City that interfered with Chavez's right to take leave under the FMLA.

### 3. Causal Connection

For purposes of evaluating Chavez's *prima facie* case, what remains for consideration is whether or not the City's action in terminating Chavez was related to the exercise or attempted exercise of his FMLA rights. The Court is aware of the chronology of events, whereby Chavez's termination occurred shortly after he asserted his rights under the FMLA. *See DeFreitas v. Horizon Inv. Mgmt. Corp.,* 577 F.3d 1151, 1160 (10th Cir. 2009)(whenever termination occurs while the employee is on FMLA leave, that timing has significant probative force as to deciding the third element of an interference claim). *See Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 961 (10th Cir. 2002)("The timing of Smith's termination[,which occurred during leave,] also

---

[6] Chavez alleges that the City was aware, prior to October 2008, of his girlfriend's health problems, because he had advised his supervisor on this topic (*See* Compl. ¶ 4). While an employer's duties under the FMLA are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave, *see Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (10th Cir. 1999), this non-evidentiary allegation in the Complaint does not constitute proof that, prior to October 2008, Chavez provided enough information to the City to put it on notice of such a need. The direct testimony of Chavez's supervisors is to the effect that they became aware of his need for medical leave in October 2008. The Family and Medical Leave Certification indicated that the date the condition commenced was September 30, 2008 (Pl.'s Ex. 7 at 2).

11

indicates a causal relation between her FMLA leave and her dismissal."). The timing here is particularly suggestive. Chavez's termination occurred less than one month after he applied for FMLA leave.

It is undisputed that all three of Chavez's supervisors were aware of Chavez's application and approval for leave under the FMLA, in early October 2008.

Here, Chavez was terminated during the allotted period of time for FMLA leave. This evidence is sufficient to meet the third prong of Chavez's *prima facie* case, *i.e.*, that his termination was related to his request for FMLA leave. *See DeFreitas*, 577 F.3d at 1160.

The Court concludes that Chavez has met sufficiently met all three prongs of his *prima facie* case to establish an interference claim under the FMLA.

### B. City's Defense that His Termination Would Have Occurred Regardless of Chavez's Request For or Taking of FMLA Leave

Given that Chavez has established a *prima facie* case of interference, to successfully defend against this claim, the City must prove that Chavez would have been terminated regardless of his request for or taking of FMLA leave. Thus, Chavez's FMLA interference claim now depends on whether the City has established that it would have terminated Chavez regardless of whether he applied for or took FMLA leave. *DeFreitas*, 577 F.3d at 1160.

The City has provided evidence, beginning in October 2007 – a year before Chavez applied for FMLA leave – of reprimands issued by the City to Chavez for misconduct. These consisted of three verbal advisements, three written letters of advisement, two suspensions from work without pay, and one mandatory referral to the Employee Assistance Program. Chavez was reprimanded frequently, often for not communicating with his supervisors about absences, coming to work late

12

and leaving early. In addition to these types of infractions, Schmader testified that Chavez was reprimanded and fired for being insubordinate, rude to his co-workers, sleeping in a City vehicle while he was supposed to be working, and failing to attend mandatory counseling with the Employee Assistance Program as ordered. (Schmader Aff. ¶ 9).

The Court concludes that a reasonable jury would not reject the City's assertion that Chavez was terminated for these reasons. To begin with, there is only one piece of evidence that Chavez was a highly valued employee doing good work, i.e., the fact that he received an award in December 2007. Even viewing the evidence in the light most favorable to Chavez, the evidence supporting his poor job performance for the ten months before he applied for leave under the FMLA is overwhelming. Not only were there numerous absences from work that were not pre-approved, and incurred prior to September 30, 2008, there are also numerous instances of poor performance and insubordination while he was actually at work – all prior to the time Chavez applied for FMLA leave.

Reviewing the record as a whole, the Court concludes that the City has met the burden of proving its defense, and that no genuine issue of material fact exists with respect to its reasons for terminating Chavez's employment. *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1289 (10th Cir. 2007). Ample undisputed evidence demonstrates that the City decided to terminate Chavez's employment, as a result of his failure to comply with the City's absence policies, over many months preceding his request for leave under the FMLA, as well as the other job-related misconduct relied upon by Schmader in his recommendation that Chavez be terminated.

This defense is not invalidated by the fact that Chavez was granted FMLA leave, effective September 30, 2008. Chavez had a continuing duty to comply with the City's absence policies, even after he was granted FMLA leave. The City is correct that a "request for an FMLA leave does not

shelter [Chavez] from the obligation, which is the same as that of any other [City] employee, to comply with [the City's] employment policies, including its absence policy." *Bones v. Honeywell International, Inc*, 366 F.3d 869, 878 (10th Cir. 2004). An employee who requests FMLA leave has no greater rights than an employee who does not request such leave. *See Id.* "[A]n employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request." *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998). Chavez's position that he was uninformed of his obligation to notify the City when he would be late to, or absent from work, once he was covered by FMLA leave, is belied by his own deposition testimony, to the effect that he knew he had to call in to work if he were late or sick or going on vacation. (Chavez Depo. at 69-70).

Chavez also argues that the violations complained of by Schmader fell during Chavez's FMLA leave, prior to his signing the acknowledgment regarding calling in for work. There is no factual basis in the record for Chavez to make an assumption that his duty to keep the City apprised as to when he needed leave to attend to his girlfriend's medical needs would vanish once he was on intermittent FMLA leave.

For these reasons, the Court concludes that there is no genuine issue of fact to dispute that the City would have terminated Chavez regardless of whether or not he applied for and/or took FMLA leave. Accordingly, summary judgment in favor of the City is appropriate on Chavez's FMLA interference claim,

### V. Retaliation/Discrimination Theory of Recovery Under the FMLA

Retaliation claims under the FMLA are subject to the burden-shifting analysis of *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Doebele v. Spring/United Mgmt. Co.*, 342 F.3d 1117, 1135 (10th Cir. 2003). Under this analysis, the plaintiff bears the initial burden of establishing a *prima facie* case of retaliation. *Id.* If the plaintiff does so, then the defendant must offer a legitimate, non-retaliatory reason for the employment action. *Id.* If the defendant produces sufficient evidence to support a nondiscriminatory explanation for its decision, the plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reasons were not its true reasons, but were a pretext for discrimination. *Id.; see also Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1263 (10th Cir. 1998)(explaining that plaintiff has the ultimate burden of demonstrating that the challenged employment decision was the result of intentional retaliation).

### A.  *Prima Facie* Case

The FMLA prohibits retaliation against individuals who make charges under or otherwise exercise rights granted by the statute. To establish a *prima facie* case under a retaliation/discrimination theory, Chavez must show that (1) he engaged in a protected activity; (2) a reasonable employee would have found the City's action materially adverse; and (3) there is a causal connection between the protected activity and the City's adverse action. *Metzler*, 464 F.3d at 1171. The first two of these requirements are clearly met in this case – Chavez engaged in a protected activity by taking FMLA leave for a serious health condition; the City was aware of such leave; and any reasonable employee would have found termination materially adverse. As with the interference claim, the Court concludes that the third element – that of a causal connection – is sufficiently met, given the short temporal proximity between the time when Chavez applied for and was granted FMLA leave, and the time of his termination. This evidence of temporal proximity between protected conduct and termination is relevant evidence of a causal connection, sufficient to "justify an inference of retaliatory motive." *See, e.g., Haynes v. Level 3 Commc'ns, LLC*, 456

F.3d 1215, 1228 (10th Cir. 2006).

### B. City's Stated Reasons for its Termination Decision

Having established his *prima facie* case, the burden now shifts to the City to demonstrate a legitimate, nonretaliatory reason for its termination decision. As above-mentioned, the City has submitted sufficient facts to support a nondiscriminatory explanation for its decision, *i.e.*, that Chavez was reprimanded frequently and ultimately fired for not communicating with his supervisors about absences, coming to work late, leaving work early, for being insubordinate, rude to his co-workers, sleeping in a City vehicle while he was supposed to be working, and for failing to attend mandatory counseling. The Court concludes that the City has sufficiently articulated and proven a legitimate, nonretaliatory reason for terminating Chavez's employment.

### C. Whether the City's Stated Reasons Were Pretextual

To defeat summary judgment, Chavez must now show that there is a genuine dispute of material fact as to whether or not the City's explanations for terminating his employment are pretextual. Chavez's five page brief is very poorly written and does not address the topic of pretext. He offers no evidence suggesting that the City was not actually concerned about his performance at work and attendance, as evidenced by multiple prior verbal and written warnings and hearings. In short, Chavez has not shown by a preponderance of the evidence that the legitimate reasons offered by the City were not its true reasons, but were a pretext for discrimination.

For these reasons, the Court concludes that Chavez has failed to demonstrate that genuine issues of fact remain as to his claim that the City's termination of him was retaliatory in nature, related to his exercise of rights under the FMLA. The City's actions doe not give rise to an

inference of retaliatory animus. Accordingly, summary judgment in favor of the City is appropriate on Chavez's FMLA retaliation claim,

**WHEREFORE, IT IS HEREBY ORDERED** that the City of Albuquerque's Motion for Summary Judgment (Docket No. 34) is **granted**, and that this case shall be **dismissed.**

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**